IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN DOUGLAS MCCASKILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-352-NJR |
| | ) |
| R. NANCE, | ) |
| NOLEN, | ) |
| COUNSELOR LYNN, | ) |
| BOB ALLARD, | ) |
| COUNSELOR SEIPS, | ) |
| COUNSELOR REEDER, | ) |
| J. PATE, and | ) |
| E. AKPORE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Stephen McCaskill, an inmate of the Illinois Department of Corrections ("IDOC"), previously incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that the defendants violated his federal constitutional rights by incarcerating him beyond the date he was eligible for mandatory supervised release ("MSR"). Plaintiff is no longer incarcerated, though he was at the time he filed this lawsuit, so this Court will conduct a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

1

>    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>    (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; certain claims in this action are subject to dismissal.

### **The Complaint**

In the Complaint (Doc. 1), Plaintiff alleges the following: on October 26, 2015, he

informed the counselor that he had submitted parole plans for two different parole sites every week for almost three months. (Doc. 1, p. 6). Plaintiff told Counselor Nance this information, and Nance looked at the computer only to find that no new sites were recorded, only Plaintiff's brother's house, which was pending, and another in Cicero, Illinois, that had been denied in July. *Id.* The sites Plaintiff had submitted plans for were St. Leonard's House and CG&G Associates, in Chicago and Chicago Heights, Illinois, respectively. *Id.* Plaintiff's parole date was on November 6, 2015, so he believes Field Services employees were unprofessional, deliberately indifferent, biased, hateful, and careless, as well as in violation of IDOC policies, in their failure to log the proposed sites submitted by Plaintiff. *Id.* The counselor did not attempt to help Plaintiff after he made this discovery, despite Plaintiff's request that he call Field Services to resolve the issue.

Plaintiff also wrote to Nolen in Field Services and Counselor Lynn about the issue, and he spoke to Bob Allard, the Supervisor of Clinical Services, who wrote Plaintiff's name down and stated he had seen something from Plaintiff. *Id.* Allard told Plaintiff that he would send him the papers he needed to fill out for a new parole site, but he never did. *Id.* Counselor Seips also failed to respond to several requests Plaintiff submitted to her regarding his parole site and asking her to send him parole resident request forms. (Doc. 1, p. 7). Defendant Nance did not respond to a grievance that Plaintiff handed him on October 26, 2015. *Id.* Field Services similarly did not respond to approximately fifteen request slips from Plaintiff to be placed on their call line in order to get his parole situation resolved. *Id.* On November 6, 2015, Plaintiff's parole was considered violated by the Springfield Prison Review Board ("PRB") for his failing to have a place of residency to parole to, though Plaintiff believes this was due to Field Services failing to enter Plaintiff's requested parole sites. (Doc. 1, p. 8),

3

On December 4, 2015, Plaintiff saw Counselor Reeder and informed her that his parole date was passed and that he had placed slips to Field Services to parole to a halfway house. (Doc. 1, p. 7). Reeder told Plaintiff he could not parole to a halfway house because he is a sex offender, which Plaintiff knows to be false because the halfway houses he requested accept sex offenders. (Doc. 1, pp. 7-8). Reeder then told Plaintiff that he had been put in for a halfway house, and when Plaintiff questioned why a murderer was approved to parole to a halfway house before him, Reeder stated loudly, in front of other prisoners, that it was because the other inmate is a murderer, and Plaintiff is a sex offender. (Doc. 1, p. 8). This put Plaintiff in a very dangerous situation, and several inmates called Plaintiff a rapist and pedophile and looked at him "crazy." *Id.* Plaintiff believes Reeder's actions violated the Privacy Act. *Id.*

On December 3, 2015, Plaintiff received a Prison Review Board Notice of Parole/MSR Violation Hearing. *Id.* On December 9, 2015, the hearing was held, and Plaintiff was served with a Parole Violation Report that was typed up by Parole Agent Pate on November 6, 2015, and signed by the Parole Supervisor Akpore on November 8, 2015. *Id.* The report stated that Plaintiff had been charged with failure to comply with MSB rule number 5, failure to provide a host site for intensive supervision. (Doc. 1, pp. 8-9). The report was false, as Plaintiff had provided host sites, but they were never entered into the computer by Nolen. (Doc. 1, p. 9). Plaintiff believes Pate and Akpore fabricated the report to cover up the situation and deprive Plaintiff of his constitutional right to be free. *Id.* Pate stated that no suitable site could be found, and also stated that the parole agency attempted to place Plaintiff at all of the places IDOC would pay for, but these paid placements could not accept Plaintiff for any number of reasons. *Id.* As far as the residences of Plaintiff's family members, Pate said these sites did not provide adequate, intensive supervision and were not acceptable. *Id.* Plaintiff claims that these excuses are lies often told to

4

keep sex offenders incarcerated. *Id.*

On December 9, 2015, Plaintiff received a memorandum from Julie Tanner in the Records Office telling Plaintiff to provide Field Services with the information of any other parole site Plaintiff wanted to be checked. (Doc. 1, p. 10). Plaintiff submitted a site, Community Care Nursing Home in Chicago, Illinois, that same day. *Id.* On January 12, 2016, Plaintiff saw Counselor Reeder and asked her to check whether Field Services had entered Plaintiff's new parole site request into the computer. *Id.* Reeder showed Plaintiff that they had not entered any that would accept Plaintiff. *Id.*

Plaintiff requests monetary damages from the defendants. (Doc. 1, p. 12).

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide this *pro se* action into four counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1** – Defendants subjected Plaintiff to cruel and unusual punishment contrary to the Eighth Amendment by failing to release him on his MSR date.

**Count 2** – Defendants deprived Plaintiff of a liberty interest without due process, in violation of the Fourteenth Amendment, when they failed to release him on his MSR date.

**Count 3** – Defendants violated Plaintiff's Fourteenth Amendment Equal Protection rights by treating prisoners who are not sex offenders differently than sex offender prisoners, including Plaintiff.

**Count 4** – Reeder violated the Privacy Act (5 U.S.C. § 552a(b)) by stating that Plaintiff is a sex offender within earshot of other inmates.

As discussed in more detail below, each count except Count 1 will be dismissed for failing to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed with prejudice as inadequately pleaded

under the *Twombly* pleading standard.

## Count 1 – Eighth Amendment

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment encompasses a claim that prison officials, acting with deliberate indifference, held an inmate beyond the term of his incarceration without penological justification. *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Claims under the Eighth Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective conditions must have resulted in an unquestioned and serious deprivation of a constitutional right. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In order to satisfy this second requirement, a plaintiff must show that a defendant was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). In other words, the prison official must have acted or failed to act despite the official's knowledge that his course of action (or inaction) could result in a violation of the prisoner's constitutional rights. *Farmer*, 511 U.S. at 842. "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)) (other internal quotation and citation omitted).

As to the objective component of this claim, Plaintiff claims that he was "violated," indicating that he was paroled merely on paper and returned to prison, as was the case with the plaintiffs in *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. Mar. 10, 2014). These facts satisfy the objective portion of Count 1. The remaining question is whether any defendant was deliberately indifferent to the risk that Plaintiff's incarceration would be improperly extended.

An examination of the Complaint reveals acts of only two defendants that may support a claim of deliberate indifference. Plaintiff notes that he spoke with Nance before his parole was violated about the addresses he submitted not being entered into the computer, and Nance refused to help him resolve the issue. (Doc. 1, p. 6). Plaintiff claims Nolen is responsible for failing to enter these addresses he submitted. (Doc. 1, p. 9). Plaintiff also claims he wrote multiple requests to Nolen and Lynn, and spoke to Allard who told him he would send him parole site forms. (Doc. 1, p. 6). Plaintiff further alleges he wrote to Seips requesting Parole Residence Request/Notification forms, but she never responded. (Doc. 1, p. 7). Plaintiff allegedly spoke with Reeder only after his parole had been violated, and she told him that it appeared that he had already been submitted for a halfway house. *Id.* Plaintiff also claims that Pate and Akpore prepared and approved his Parole Violation Report, but he does not allege that they were responsible for failing to let him out on parole. (Doc. 1, pp. 8-9).

There is no suggestion in the Complaint that the potential addresses submitted by Plaintiff were suitable, aside from Plaintiff's contention that these facilities accepted sex offenders, and there is no indication that these sites were approved, or would have been approved, by the relevant authority. In fact, Plaintiff does not identify the relevant authority responsible for the decision to "violate" him at all.

Based on the allegations, it is unclear where the fault may lie for the failure to release Plaintiff from prison.[1] This could have been the result of negligence (which does not amount to deliberate indifference), or the individual(s) at fault might have made significant efforts to seek out a placement, only to find that the potential addresses were unsuitable, and there was no other suitable space available, as Pate allegedly stated in the parole hearing. Plaintiff alleges, however, that a large part of his not being released can be attributed to the failure of Field Services, including Nolen, to enter his placement requests into the computer at the outset. If Nolen deliberately failed to enter Plaintiff's proposed parole sites into the computer, this could potentially satisfy the subjective component of the deliberate indifference standard.

With respect to the other defendants, it is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015)

---

[1] The discussion in *Murdock* of the shortcomings of the parole system in Illinois vis-à-vis sex offenders is instructive as to who may be to blame for Plaintiff's delayed release. *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014). In a nutshell, the Illinois PRB is responsible for determining whether a prisoner has served a sufficient portion of his sentence to be released on parole/mandatory supervised release, and if so, can order his release. 730 ILL. COMP. STAT. 5/3-3-7. The PRB also sets the conditions for parole, and determines whether parole should be revoked if a condition is violated. 730 ILL. COMP. STAT. 5/3-3-1. IDOC, which is an agency independent from the PRB, retains custody of parolees and supervises them during their parole term. Before IDOC may release an inmate on parole, it must determine whether an individual parolee is in compliance with all conditions of his supervised release. These conditions include being housed in a "proper and approved residence." *Murdock*, 2014 WL 916992, at *9-10 (quoting 20 ILL. ADMIN. CODE § 1610.110(a)(1)). The Code directs that a parolee "*shall not be released*" until suitable housing arrangements have been made. § 1610.110(a) (emphasis added). Sex offenders face many statutory restrictions on where they may reside, such as the home's proximity to schools, parks, day care centers, and other known sex offenders. See 730 ILL. COMP. STAT. 5/3-3-7. Numerous sex offenders who are otherwise eligible for parole – the class of Plaintiffs certified in *Murdock* – have been and are continuing to be held in prison by IDOC officials because they lacked an approved residence, and thus could not comply with the conditions of their parole. This has become known as the "turnaround practice" – an inmate is technically "paroled," but is turned around at the prison gate and returned to custody because he cannot be released without a parole site. The Murdock court characterized this as a "Kafkaesque loop," and observed, "The Plaintiffs are caught in a system that requires the intervention of the Illinois legislature, not this Court." *Murdock*, at *4, *15.

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.")). "In other words, prisoner requests for relief that fall on 'deaf ears' may evidence deliberate indifference." *Perez*, 792 F.3d at 782.

Plaintiff's claim that he directly requested help from Nance to remedy the failure of Field Services, namely Nolen, to enter his requested addresses into the system prior to his MSR date, only for Nance to refuse to help him, could state a claim for deliberate indifference on the part of Nance for turning a blind eye to Plaintiff's plight. Plaintiff's allegations against the other defendants do not state such a claim, however, as they are vague and lack any information indicating these defendants were actually aware of a potential constitutional deprivation and were capable of taking steps to remedy it. With these defendants, Plaintiff's allegations do not satisfy the *Twombly* pleading standard.

Thus, construing all allegations liberally in favor of Plaintiff, the Complaint states a deliberate indifference claim against Nolen and Nance at this stage, because their allegedly deliberate acts potentially resulted in an extension of Plaintiff's incarceration. Count 1 will therefore be allowed to proceed against them. Count 1 will be dismissed as to the other defendants, however, for failure to state a claim upon which relief can be granted. Out of an abundance of caution, this dismissal shall be without prejudice.

## Count 2 – Due Process

This claim presents the question of whether defendants deprived Plaintiff of a liberty interest without due process when he was not released upon eligibility for MSR. Initially, the Court must examine whether Plaintiff had a liberty interest protected by the Fourteenth Amendment. A convicted prisoner has no constitutional right to be released from incarceration before the expiration of his sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). While a state may create an expectation of parole that qualifies as a liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Heidelberg v. Ill. Prisoner Review Bd.*, 163 F.3d 1025, 1026 (7th Cir. 1998), the Illinois Supreme Court does not view the Illinois parole/MSR scheme as creating a liberty interest. *See generally Hill v. Walker*, 948 N.E.2d 601, 605-06 (Ill. 2011). The Seventh Circuit has recognized, however, that if an inmate has been placed on parole, he has a liberty interest in retaining that status. *See Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 781 (7th Cir. 2008); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee . . . . the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.").

As noted above, it appears that Plaintiff may have been paroled, if only as a formality, before he was "readmitted" to the prison, though the cause, and whether this actually happened, is unclear based on the pleadings. In this circumstance, Plaintiff may have had a protected liberty interest if he was indeed paroled. *See Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992, at *6 (N.D. Ill. Mar. 10, 2014). Further, he would have been deprived of that interest when he was not permitted to begin his parole/MSR on the scheduled date. Assuming the facts alleged show that Plaintiff indeed had a liberty interest, in order to maintain a constitutional claim for loss of

10

that liberty interest, Plaintiff also must show that one or more defendants deprived him of his liberty without due process.

The *Murdock* court conducted a thorough analysis of the due process claim brought by a class of plaintiffs, and that analysis applies equally to this case. *Murdock*, 2014 WL 916992, at *6-12. Due process is "not a static concept," but "requires government to follow 'reasonable procedures' in making its liberty determinations." *Murdock*, 2014 WL 916992, at *6 (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011)). The statutory scheme in Illinois governing parole release and revocation complies with constitutional requirements that a parolee be notified of a claimed parole violation and the evidentiary basis against him, be given an opportunity to be heard and to present a defense and confront witnesses before a neutral hearing body, and receive a written statement of the parole revocation decision and the evidence supporting it. *Id*. at *6-7. The PRB is vested with authority to conduct revocation hearings, and IDOC has no authority to do so. 20 ILL. ADMIN. CODE § 1610.140; 730 ILL. COMP. STAT. 5/3-3-9(c); *Murdock*, at *7. The PRB, however, unilaterally decided to stop conducting hearings for sex offenders who were denied parole release due to the lack of an approved housing site, because these hearings were a "charade." *Murdock*, at *8. Thus, sex offenders who are not released on parole on this basis do not always receive the process described in the state statutes, though in this case it appears that Plaintiff received at least some portion of it. Despite the lack of process, the *Murdock* court determined that the "turnaround practice" did not violate the plaintiffs' due process rights.

Notably, IDOC officials are following the law when they decline to release an inmate who is eligible for parole but cannot satisfy this condition for his release. *Murdock*, at *8-9. The *Murdock* court observed:

> [I]t is true that the Plaintiffs had a right to release once the PRB issued a release order, but that right was subject to appropriate conditions being met. The Plaintiffs did not satisfy a required condition, so the Defendants did not violate the Plaintiffs' right to release by complying with the State of Illinois's constitutional regulations preventing IDOC from releasing parolees without proper housing.

*Murdock*, at *9.

The *Murdock* court also determined that the turnaround practice provides adequate notice to prisoners who face the prospect of continued incarceration despite their eligibility for parole. *Id*. at *9-10 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (due process clause does not demand "perfect clarity and precise guidance")). Prisoners are put on notice that IDOC officials must approve their host site before they can be released, they are notified if their proposed host site location is not approved, and if they disagree with the disapproval, they may "challenge the determination or file a grievance." *Murdock*, at *10. As such, the *Murdock* plaintiffs were not deprived of a liberty interest without due process.

Plaintiff submitted several potential parole sites for himself. As is evidenced in his Complaint, Plaintiff was aware that an appropriate placement would have to be found for him before he could be paroled, as he submitted potential parole addresses well before his MSR date. He therefore seems to have had advance notice of this condition. Plaintiff was "violated" on his MSR date, but unlike the *Murdock* Plaintiffs, he alleges that he received notice and a hearing soon thereafter. While Plaintiff is apparently frustrated that the grievances he filed regarding this matter did not expedite his release from prison, and he believes Pate lied in his Parole Violation Report, the fact that this procedure did not have a favorable outcome does not mean that he was denied due process.

Further, the Complaint does not articulate any other procedural protections that should have been afforded to Plaintiff in connection with the decision to retain him in IDOC custody,

nor do the facts of this case suggest any. The basic requirements of due process are notice and an opportunity to be heard. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 579, (1975) (at a minimum, due process requires "*some* kind of notice and . . . *some* kind of hearing") (emphasis in original); *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974). As noted above, IDOC officials have no authority to conduct a hearing with regard to a denial or revocation of parole, as that function is reserved for the PRB. Plaintiff was still granted this opportunity, though, and he had a hearing with notice. This Court also agrees with the *Murdock* court's conclusion that the turnaround practice provides adequate notice and opportunity to challenge the denial of release for sex offenders who lack an approved housing site, even without such a hearing.

The Complaint does not state a cognizable Fourteenth Amendment claim against the defendants for denying Plaintiff a liberty interest without due process. Count 2 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 3 – Equal Protection

Plaintiff also alleges in his Complaint that he was discriminated against by the defendants because he is a sex offender in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1, p. 7). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motived by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Actions may have discriminatory effect when they cause a plaintiff to be treated differently from other similarly situated individuals. *Id.* at 636. Further, to state a claim for violation of the Equal Protection Clause, plaintiffs usually must allege that they are members of a "suspect class." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). "Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens." *Johnson v. Daley*, 339 F.3d 582,

585-586 (7th Cir. 2003).

A plaintiff can also allege that the defendant discriminated against him in particular—so called "class-of-one" claims. Such claims require the plaintiff to allege that "the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). To plausibly allege such a claim, the "plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Village of Western Springs*, 612 F. App'x 842, 847 (7th Cir. 2015).

Plaintiff claims the alleged discrimination is due to his label as a sex offender. The specific allegedly discriminatory acts include a murderer being allowed to parole at a halfway house while Plaintiff's parole was considered violated and, generally, prison officials allegedly taking deliberate steps to keep sex offenders incarcerated past their MSR dates. Plaintiff has not alleged that he is in a suspect class, because sex offenders are not a suspect class. Further, Plaintiff has not negated any reasonably conceivable set of facts that could provide a rational basis for his being held in prison while other types of offenders were released, or his being held in prison after his MSR date generally.

In the absence of these facts, Plaintiff has failed to state an equal protection claim upon which relief may be granted. Count 3 shall therefore be dismissed. Out of an abundance of caution, this dismissal shall be without prejudice.

## **Count 4 – Privacy Act**

Plaintiff alleges that Reeder violated the Privacy Act, 5 U.S.C. § 552a(b), presumably by stating within earshot of other inmates that Plaintiff is a sex offender. This claim does not survive § 1915A review. The Privacy Act prohibits unconsented disclosures of information,

specifically requiring that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless [certain exceptions apply].

5 U.S.C. § 552a(b). The Privacy Act provides for a private cause of action against a federal agency where an individual may recover monetary damages for a violation. 5 U.S.C. § 552a(g)(1). Plaintiff has not named a federal agency, or the United States, as a defendant in this action, and a Privacy Act claim, where one exists, cannot be brought against an individual official such as Reeder. Plaintiff's Privacy Act claim will therefore be dismissed without prejudice, though it will be dismissed with prejudice as against Reeder.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **NOLEN** and **NANCE**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 4** shall be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted, though it is dismissed with prejudice as against **REEDER**.

**IT IS FURTHER ORDERED** that Defendants **LYNN, ALLARD, SEIPS, REEDER, PATE**, and **AKPORE** shall be **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that as to **COUNT 1**, the Clerk of Court shall prepare for

**NOLEN** and **NANCE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If one of the defendants fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon the defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 26, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**